# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RAMON BOYCE,

             Petitioner,      :      Case No. 3:21-cv-216

  - vs -                            District Judge Thomas M. Rose
                                      Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,
  Chillicothe Correctional Institution,

                                 :

             Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

      This habeas corpus case, brought *pro se* by Petitioner Ramon Boyce under 28 U.S.C. § 2254, is before the Court on Petitioner's Objections (ECF No. 76) to the Magistrate Judge's Second Substituted Report and Recommendations ("Report," ECF No. 71).  District Judge Rose has recommitted the case for reconsideration in light of the Objections (Order, ECF No. 82). Respondent has not replied to Petitioner's Objections within the time allowed by Fed.R.Civ.P. 72.

      Boyce pleaded thirteen grounds for relief, all of which the Report recommended dismissing.  His Objections, some of which are duplicative, will be discussed in the order he has presented them.

**Ground One:  Improper Allowance of Evidence Related to a Prior Burglary Conviction**

      In his First Ground for Relief, Boyce claims the trial court violated his constitutional rights

1

by admitting evidence of his 2008 conviction for burglarizing the Parsons residence in Springfield. He had raised claims relating to the admission of this evidence on direct appeal to the Ohio Second District Court of Appeals as his First and Second Assignments of Error which that court overruled. The Report quotes that opinion at length (ECF No. 71, PageID 5005-12) and concludes the Second District decided these claims as a matter of Ohio law. Because Boyce had not fairly presented his constitutional claims regarding the 2008 conviction on direct appeal, he had therefore procedurally defaulted them, requiring dismissal. *Id.* at PageID 5015.

Boyce now objects to the Second District's conclusion the 2008 conviction was admissible as a predicate act for the pattern of corrupt activity charge because "it did not qualify for a predicate act under [Ohio Revised Code §] 2923 .31 or 2923 .32 the Ohio version of "RICO" known as "Engaging in a Pattern of Corrupt Activity." (ECF No. 76, PageID 5044). The 2008 Springfield burglary did not qualify as a predicate act, he claims, because burglary lacks the required "enterprise" element. *Id.* at PageID 5045. He then cites a number of Ohio cases holding what is required to establish an "enterprise.[1]" Because no evidence was offered to show that anyone else was involved with him in the Parsons burglary, it is "disqualifie[d] . . . from being used as a predicate act of engaging in a pattern of corrupt activity." *Id.* at PageID 5046. He concludes "The trial courts use of the Parsons burglary prejudiced Petitioner fundamental right to a fair trial as addressed in the traverse." *Id.* at PageID 5047.

Boyce's objections on Ground One should be overruled. He never responds to the Report's conclusion that this claim was not fairly presented to the Second District as a constitutional question. Although he has acknowledged the authority of *Hand v. Houk*, 871 F.3d 390, 418 (6th

---

[1] He also cites *Boyle v. United States*, 556 U.S. 938, 947 (2009), which an opinion of the Supreme Court interpreting "enterprise" as used in the federal Racketeering Influenced and Corrupt Organizations (RICO) Act. Ohio's corrupt practices act is patterned on RICO, but the U.S. Supreme Court's interpretation of parallel language does not impose a constitutional definition.

2

Cir. 2017), on the question of what constitutes fair presentation of a constitutional issue, he nowhere attempts to show he has satisfied that standard. Instead he seems to believe that labeling an asserted error of Ohio evidence law as "fundamentally unfair" is adequate. It is not. Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same).

The question of whether a predicate act in an Ohio corrupt practices case must involve an "enterprise" is a question of Ohio law on which a habeas court is bound by the decisions of the Ohio courts, even the decisions in the same case. *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."), *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005); *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986). If a state court determines that a burglary is, under the circumstances of a particular case, a predicate act for conviction on a later charge of engaging in a pattern of corrupt practices, a federal habeas court has no authority to substitute its own judgment on that question. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160

3

(1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring). Ground One should therefore be dismissed.

**Ground Two: Evidence Admitted from Warrantless Search of Car in Violation of the Fourth Amendment**

In his Second Ground for Relief, Boyce claims the trial court admitted evidence obtained by the police in a warrantless search of his car. Respondent asserted the claim was not cognizable in habeas, relying on *Stone v. Powell*, 428 U.S. 465 (1976), and *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). Boyce asserted this bar was overcome by the trial judge's persistent abuse of the motion to suppress process in this and many other cases. The Report acknowledged those accusations, if proven, would be sufficient to overcome *Riley,* but found "there is not a scrap of evidence in the State Court Record to support them." (Report, ECF No. 71, PageID 5016). Boyce attached to his Objections documents showing he had complained to the Ohio Supreme Court about Judge Rastatter's approach to suppression motions. The Magistrate Judge struck those exhibits and then denied a motion to add them by expansion of the record (ECF Nos. 80, 85) because they were not part of the record on which the state courts decided Boyce's criminal case.

In his Objections, Boyce recounts that his attorney filed a motion to suppress, Boyce told him it would be pointless because of Judge Rastatter's record, and the attorney refused to file an affidavit of disqualification because it would adversely affect his practice (ECF No. 76, PageID 5052-53). None of these assertions of fact are supported by citation to the State Court Record. Boyce admits Judge Rastatter held a suppression hearing and issued a written decision, but claims it was all a "sham proceeding" to avoid an appellate remand. *Id.* at PageID 5053.

Boyce then recounts his *pro se* efforts to disqualify Judge Rastatter and grievances filed

4

with the Ohio Disciplinary counsel and the Ohio State Bar Association. *Id.* at PageID 5053-55. He then recounts his efforts to raise these issues *pro se* on appeal. *Id.* at PageID 5056-57. He cites other cases involving criticism of Judge Rastatter by other litigants: *State v. Daly,* 2007-Ohio-5170 (2007); *State v. Rigel (In re Disqualification of Rastatter)*, 147 Ohio St. 3d(May 25, 2016); *State v. Quinn (In re Rastatter),* 143 Ohio St. 3d 1239 (April 9, 2015); *State v. Marler (In re Rastatter),* 113 Ohio St. 3d 1218 (July 27, 2006); *State v. Boyce (In re Rastatter),* 136 Ohio St. 3d 1271(August 12, 2013); and *State v. Eggers*, 2013-Ohio-3379 (August 2, 2013). He concludes this objection by arguing again that Judge Rastatter was wrong on the merits of the suppression motion.

Boyce's objections on Ground Two should be overruled. None of his factual assertions is backed up by citation to the State Court Record except his *pro se* efforts to raise his issues with Judge Rastatter on appeal. The fact that he was able to do so confirms the applicability of *Stone* and *Riley*: although he did not win, he was able to obtain appellate consideration of his claims. Likewise he point to no appellate precedent adopting his position on Judge Rastatter's alleged bias.

Boyce received the process required by *Riley*. The fact that it did not produce what he believes is the correct result is not determinative. Ground Two should be dismissed as not cognizable in habeas corpus.

**Ground Three: Convictions Upon Insufficient Evidence and Against the Weight of the Evidence**

In his Third Ground for Relief, Petitioner asserts he was convicted on insufficient evidence and against the weight of the evidence. The Report recommended the weight of the evidence claim be dismissed as non-cognizable and Boyce does not object.

5

Boyce conceded he had not raised the insufficiency claim on direct appeal, but sought to excuse that omission by asserting his appellate attorney provided ineffective assistance of appellate counsel in not doing so. The Report noted that the ineffective assistance of appellate counsel claim had been presented to the Second District in an Ohio App. R. 26(B) application and denied on the merits. Because that denial was an objectively reasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), it was entitled to deference under 28 U.S.C. § 2254(d)(1) and ineffective assistance of appellate counsel could not be used to excuse failure to raise the insufficiency claim on direct appeal (Report, ECF No. 71, PageID 5018-20). See *Edwards v. Carpenter*, 529 U.S. 446 (2000).

Boyce objects that he attempted to raise this insufficiency claim in a *pro se* brief on appeal which the Second District rejected. Because the Second District would not permit hybrid representation and struck the *pro se* brief, the insufficiency claim was never fairly presented to the Second District as a stand-alone claim, but only as a claim underlying the Rule 26(B) application. Its lack of merit was the basis for denial of the ineffective assistance of appellate counsel claim.

Boyce objects that the Second District did not follow proper procedure in considering his 26(B) application and therefore its conclusion is not binding (Objections, ECF No. 76, PageID 5066, *et seq.*) He asserts the Second District should have followed the process required by *State v. Leyh*, 166 Ohio St. 3d 365 (Feb. 8, 2022). The Magistrate Judge disagrees.

The correct interpretation of Ohio App. R. 26(B) is obviously a question for the Ohio Supreme Court to decide.[2] Under the Modern Courts Amendment, the Ohio Supreme Court is empowered to adopt, interpret, and amend rules of practice for the Ohio courts. *Leyh* represents a

---

[2] Rule 26(B) was drafted by the Ohio Supreme Court Rules Advisory Committee at the direction of the court in *State v. Murnahan*, 63 Ohio St. 3d 60 (1992), to provide the exclusive forum in which to raise ineffective assistance of appellate counsel claims in the Ohio courts.

6

major shift in interpretation of the Rule. While the text of the Rule anticipates a two-stage process in which the appeals court first decides if there is a colorable claim of ineffective assistance of appellate counsel and then proceeds to merits consideration, many appeals courts had conflated the two stages and decided an application lacked merit upon initial filing. The Ohio Supreme Court had allowed this practice for some time (See *State v. Simpson*, 164 Ohio St. 3d 102 (2020)), but in *Leyh* insisted on a stricter application of the text.

The flaw in Boyce's argument is that the Second District could not have followed *Leyh* when it decided his 26(B) application because its decision was handed down December 20, 2020, more than a year before *Leyh* was decided. Moreover, Boyce did not claim in his appeal to the Ohio Supreme Court that the Second District had not followed the text of 26(B) as later interpreted in *Leyh* (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 17-1, Ex. 49). That is, he did not make, in anticipation of *Leyh*, the argument the Ohio Supreme Court eventually adopted in that case. Indeed, even though his Traverse was filed after many continuances and more than a year after *Leyh* was decided, Boyce did not cite *Leyh* to this Court until his Objections.

Boyce objects that the Second District's decision misapplied *Strickland* (ECF No. 76, PageID 5069), but that is a mere conclusory allegation – he makes no argument as to why or how *Strickland* was misapplied. The test for ineffective assistance of appellate counsel is whether the omitted assignment of error is stronger than the assignments actually pleaded. To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* The Second District thoroughly vetted the

underlying sufficiency of the evidence claim and found it would not have had merit. That is a completely reasonable application of *Strickland*.

Boyce spends many pages discussing the evidence on the various counts of conviction. However, again, he has procedurally defaulted on his sufficiency of the evidence claim for the reasons already given.

**Ground Four: Denial of Suppression Hearing on Claimed Improper Identifications of Property**

In his Fourth Ground for Relief, Boyce claims he was unconstitutionally denied a suppression hearing related to identifications of purportedly burglarized property. To the extent this Ground for Relief attempts to raise underlying Fourth Amendment search and seizure claims, the Report found it was barred by *Stone, supra*. (ECF No. 71, PageID 5020). To the extent Boyce was seeking a pre-trial hearing out of the presence of the jury on the reliability of identification of piece of personal property (mostly jewelry), the Report concluded there was no such constitutional right and recommended dismissal for non-cognizability. *Id.*

The Objections confirm Boyce sought a pre-trial suppression hearing only on Fourth Amendment claims, not on the reliability of identification of property. Consideration of the Fourth Amendment claims is barred by *Stone* and *Riley*, for the reasons given respecting Ground One.

**Ground Five: Admission of Other Acts Evidence**

In his Fifth Ground for Relief, Boyce asserts the trial court abused its discretion by admitting in evidence his prior burglary conviction and a Columbus burglary because these prior convictions did not contain the element of engaging in a pattern of corrupt activity. The Report

8

concluded this claim raised only questions of Ohio evidence law and should be dismissed on that basis. This Supplemental Report reiterates that analysis under Ground One above.

**Ground Six: Defendant Barred from Jury Instructions**

The Report read this as a claim that the trial judge would not allow Boyce, who was trying the case *pro se*, to participate in delivering the jury instructions. The Report concluded there was no such constitutional right and Boyce does not object.

An alternative reading of Ground Six is that the trial court deprived Boyce of an opportunity to place his objections to the court's jury instructions on the record. In his Objections Boyce agrees this is the correct reading of Ground Six. The Report recommended this alternative reading be dismissed because Boyce's appellate counsel[3] had not made his proffered objections part of the appellate record[4]. The Report noted that Boyce had treated this matter as sufficiently serious to include it as part of his 26(B) claims of ineffective assistance of appellate counsel which the Second District held was without merit because Boyce objections to the instructions would not have prevailed on direct appeal. The Second District also noted that the record of the sidebar conference after the instructions were given showed no objection by Boyce.

Boyce's objections focus on the Second District's failure to apply *State v. Leyh, supra*. As noted above, The Second District could not apply *Leyh* because it had not yet been decided. Indeed, Boyce did not even cite *Leyh* to this Court in his Traverse.

---

[3] Although he tried the case *pro se*, Boyce had counsel on appeal.
[4] Boyce claimed the transcript at PageID 4491 showed the trial judge's refusal to allow him to make a record on this point, but the Report notes the referenced page does not show any such interaction.

**Ground Seven: Violation of *Brady v. Maryland* by Failing to Disclose a Police Run Log**

In his Seventh Ground for Relief, Boyce claims the State violated his due process rights as established by *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose a police run log that shows he was miles away from the relevant crime scene at the time the crime occurred. The relevant crime is a Franklin County burglary which was offered as a predicate act for Boyce's pattern of corrupt activity case.

The Report concluded the run log was not material because its introduction in the Franklin County case did not persuade the jury there to acquit and Boyce had not proven it was in the possession of the Clark County authorities in any event.

Boyce objects on the first point because he says he was prevented from presenting the log to the Franklin County jury and he is presently seeking a new trial on that and other points. As to the second point, he finds support in *Kyles v. Whitley*, 514 U.S. 419 (1995), claiming the Franklin and Clark County law enforcement authorities were collaborating in the prosecution. But neither of these objections speaks to the Respondent's procedural default defense which notes that this *Brady* claim was raised for the first time in a petition for post-conviction relief which was untimely filed. Boyce made no comment on that point in his Traverse. Because the statute of limitations for post-conviction petitions in Ohio Revised Code § 2953.23 is jurisdictional, the Court should dismiss Ground Seven as procedurally defaulted.

**Ground Eight: Failure to Suppress Unlawfully Seized Evidence**

In his Eighth Ground for Relief as pleaded in the Petition, Boyce complains of the trial court's failure to suppress evidence related to later indictments. The Report noted, however, that by the time the Traverse was filed, this claim had "morphed into an ineffective assistance of trial counsel claim wherein he asserts appointed defense counsel was ineffective for failure to be expansive enough in the searches he challenged, filing instead a "barebones motion to suppress." (Report, ECF No. 71, PageID 5027, citing Traverse, ECF No. 67, PageID 4966, *et seq.*).

Because new claims cannot be added at the traverse/reply stage of habeas proceedings, the Report recommended Ground Eight be dismissed as improperly pleaded and because it is barred by Ohio *res judicata* doctrine: it could have been but was not raised on direct appeal. *Id.* at PageID 5027.

Petitioner objects that he has already laid out his case about Judge Rastatter's aversion to suppression motions. For the reasons already given, this does not take Ground Eight outside the bar of *Stone* and *Riley*. And although Petitioner claims he did not alter his claim to ineffective assistance of trial counsel, he has not refuted the procedural default analysis of that sub-claim.

**Ground Nine: *Brady* Violation Regarding DNA Evidence**

In his Ninth Ground for Relief, Boyce asserts the State violated his due process rights under *Brady* by not disclosing DNA evidence which would have proven him innocent. The Report noted that Boyce refers to DNA reports by identifying number, which implies he has seen them. Where, then, is the *Brady* violation? If the jury was told that collected physical evidence did not contain Boyce's DNA, what more would the reports have shown to the jury? Based on this lack of

11

materiality, the Report recommended dismissing Ground Nine.

Boyce objects that he attached the reports to his Post-Conviction Petition and gives PageID reference numbers. The Post-Conviction Petition is part of the State Court Record at ECF No. 17-1, Ex. 58, a document over one hundred pages long. As noted above, the Common Pleas Court has not acted on this Petition and it must be presumed denied. It is required to be denied on statute of limitations grounds unless Boyce can bring himself within an exception; he has not argued here what that would be. He does not refer to any expert report interpreting the DNA reports that would explain how they show he is innocent.

Whatever the reports show – and they are not self-interpreting – Boyce claims the State lied to the jury by saying to it "No DNA related evidence was collected" (Objections, ECF No. 76, PageID 5104, quotation marks in the original). No record reference is given for this alleged statement and Boyce does not identify the speaker or context. Boyce notes the absence of an expert report explaining the reports to the jury, but that report is still missing from the Post-Conviction Petition.

The Objections do not establish that Boyce is entitled to the writ on Ground Nine which should be dismissed.

**Ground Ten: Denial of Right to Compulsory Process**

In his Tenth Ground for Relief, Boyce claims his right to compulsory process was denied when witnesses he wished to have at trial were not subpoenaed. The Report notes that this claim was first raised in the Post-Conviction Petition which has not been decided. Analyzing the claim *de novo*, the Magistrate Judge concluded the Common Pleas Court reasonably imposed on Boyce an obligation to disclose what evidence the witnesses would have to give and Boyce did not comply

(Report, ECF No. 71, PageID 7029). Boyce objects that he did comply but gives no record references (Objections, ECF No. 76, PageID 5105).

The Report concluded this claim was procedurally defaulted by Boyce's failure to raise it on direct appeal. *Id.* at PageID 5030.

In his Objections Boyce claims with no record support that Judge Rastatter attempted to intimidate these witnesses with various comments about their testimony (Objections, ECF No. 76, PageID 5107). He also claims the State repeatedly implied Boyce was lying about what these witnesses would say, but again he gives no record references (Objections, ECF No. 76, PageID 5108). Boyce attempts to overcome the *State v. Perry res judicata* bar by claiming he learned important facts about this claim after trial and appeal, but the question under *Perry* is whether the claim could have been litigated on what the appellate record would have shown, not whether more evidence became available later. Ground Ten should be dismissed.

**Ground Eleven: Interference with a Witness**

In his Eleventh Ground for Relief, Boyce claims that his co-defendant sister was persuaded not to testify by her attorney's telling her the judge would not allow her to testify. The Report rejected this claim on the basis that the acts of the sister's attorney did not amount to state action (Report, ECF No. 71, PageID 5031, citing *Polk County v. Dodson* 454 U.S. 312 (1981)).

Boyce objects that it was Judge Rastatter's actions which kept his sister from testifying and cites her Affidavit at PageID 859. The document is a one-page attachment to the Petition for Post-Conviction Relief dated October 7, 2020. It states that Quianna Boyce's attorney told her the court would not permit her to testify, but this is uncorroborated hearsay. If that is what Attorney Murphy

13

said, why not provide his affidavit? And why wasn't it offered in connection with a timely post-conviction petition?

**Ground Twelve: Prosecutorial Misconduct**

In his Twelfth Ground for Relief, Boyce claims the State used "sham legal process" to present false testimony to the grand jury to obtain an indictment. He reasons that since all the collected evidence shows he is not guilty, the State must have presented false testimony to get an indictment.

The Report noted Boyce's repeated claim that the State used "sham" legal process in violation of Ohio Revised Code § 2921.52 to obtain his indictment, but provided no evidence of any sham process (Report, ECF No. 71, PageID 5031). The Report rejected Boyce's claim that his Fifth Amendment right to grand jury indictment had been violated by noting there is no such right. *Id.* at PageID 5032, citing, inter alia, *Gerstein v. Pugh,* 420 U.S. 103 (1975). Likewise this claim is procedurally defaulted because not raised on direct appeal, a point to which Boyce did not respond. *Id.*

Boyce objects with citations about "fundamental unfairness." None of them overrules *Gerstein* which merely reiterated the non-applicability of the Fifth Amendment in state court originally made in *Hurtado v. California*, 110 U.S. 516 (1884). He still cites no examples of "sham" legal process. He accuses the prosecutor of suborning or acquiescing in perjury in violation of *Napue v. Illinois*, 360 U.S. 264, 269 (1959), but gives no examples.

**Ground Thirteen: Denial of Opportunity to Object to Jury Instructions or Verdict Forms**

In his Thirteenth Ground for Relief, Boyce claims the trial judge would not permit him to make objections to the jury instructions or verdict forms, either orally or by written motion. The Report found this claim was procedurally defaulted for lack of a contemporaneous objection, Boyce claims he did object but the court reporter omitted his objections, but he does not explain why that was not properly brought to the attention of the court of appeals[5]. Moreover, the Report found errors of state law in the instructions were not cognizable in habeas (Report, ECF No. 71, PageID 5033-34).

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 22, 2023.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such

---

[5] He attempted a correction *pro se*, but the Second District would not allow hybrid representation.

objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge
